IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 1:17-cr-215 |
| v. ) | |
| ) | |
| [3] JOVANDA R. PATTERSON, ) | |
| ) | |
| *Defendant*. ) | |

**DEFENDANT'S POSITION ON SENTENCING**

Defendant Jovanda R. Patterson, by and through counsel, hereby submits this memorandum in aid of sentencing.

**INTRODUCTION**

Ms. Patterson has devoted nearly all of her adult life to public service, having served as a non-commissioned officer in the United States Air Force and subsequently as an employee of the Department of Veterans Affairs and the Federal Emergency Management Agency for a total of 20 years. During this long period of service to her country, Ms. Patterson worked hard, strove for excellence, and undertook to maintain the highest ethical standards. On May 8, 2018, she made a mistake—one that had criminal consequences. She took actions that constituted an official conflict of interest while she was a federal employee.

Ms. Patterson now stands before the Court, admitting that she broke the law, recognizing the serious nature of the offense she committed, and accepting full responsibility for her actions. Ms. Patterson has been devoted to making amends for her actions by owning up to what she did, making herself available for a proffer session with the government, and pleading guilty. She has also spent a considerable amount of time reflecting on her conduct and charting a plan for the future.

Ms. Patterson is genuinely remorseful for what she did. She respectfully requests that the Court take into account the nature of the offense as well as her demonstrated contrition, background, character, and plans for the future in imposing a sentence of probation, a sentence the government supports.

## BACKGROUND

Ms. Patterson's Family, Education, and Career

As noted in the presentence report ("PSR"), Ms. Patterson was born in Visalia, California in 1979. PSR at ¶ 60. She and her four siblings were raised in a close-knit family by her parents, Johnny Ray Patterson, who passed away five months ago, and Elorise Patterson. *Id.* She remains close to her family and recently has moved back to her hometown of Tulare, California. *Id.* at 2.

Following her graduation from high school, Ms. Patterson began her career by enlisting in the U.S. Air Force. *Id.* at ¶ 84. She served in various positions of increasing responsibility, including as a squadron aviation resource manager, and in a variety of locations within the United States and overseas, eventually attaining the rank of staff sergeant (E-5) and earning several awards and decoration. *Id.* Following 12 and a half years of service, she received an honorable discharge in 2010. *Id.* That same year, she completed an associate's degree in aviation management at the Community College of the Air Force. *Id.* at ¶ 76.

In 2011, Ms. Patterson went on to earn a bachelor's degree in workforce education and development from Southern Illinois University and began the next phase of her federal service in a work-study program at the Department of Veterans Affairs ("VA") in Oakland, California. *Id.* at ¶ 76, 80. In 2013, she joined the Federal Emergency Management Agency ("FEMA"). *Id.* at 80. Although assigned to the agency's Oakland office, Ms. Patterson was deployed to

Sacramento, California; Florida; and Puerto Rico in connection with natural disaster relief efforts. Along the way, in 2015, Ms. Patterson earned a master's degree in education from Brandman University. *Id.* at ¶ 76.

In July 2018, Ms. Patterson began employment with Cobra Energy ("Cobra") in support of the company's business development efforts. *Id.* at 80. She left Cobra in March 2020, *id.*, and is now seeking employment in California.

Interactions With Cobra Acquisitions

In November 2017, following the loss of many lives and widespread destruction in Puerto Rico caused by Hurricane Maria, FEMA deployed Ms. Patterson to assist with the agency's relief efforts on the island. After a several weeks working in the disaster's Chief of Staff's office, she was assigned to work as a Special Assistant to Federal Coordinating Officer Timothy J. Scranton, the head of the Municipalities Sector in Puerto Rico. *Id.* at 80. Her duties and responsibilities included limited contact with certain employees of Cobra, an energy infrastructure company engaged to assist restoring the power grid on the island. One of those Cobra employees was Jason Russell ("Russell"), who assisted Ms. Patterson in obtaining company-owned photographs for use at a FEMA-sponsored event.

In approximately May 2018, Russell asked Ms. Patterson for advice about how to get a new Cobra affiliate, Cobra Logistics, qualified to submit bids for federal contracts. Ms. Patterson provided some guidance, including how to obtain past performance evaluations. When Russell asked Ms. Patterson to complete such an evaluation in her capacity as a representative of FEMA, she agreed to do so. Hers was one of several submitted on behalf of the company. By this time, Ms. Patterson had had some discussions with Cobra employees about the prospect of employment.

**POSITION ON PRESENTENCE REPORT**

Ms. Patterson agrees with the presentence report's calculation of an offense level of 4, with a corresponding advisory guidelines range of zero to six months.

Ms. Patterson objects to the following portions of the PSR:

*Paragraph 10*

Ms. Patterson objects to the inclusion of information related to the wire fraud allegations reflected in Counts 14 and 15 of the indictment. She respectfully requests the removal of Paragraph 10, which summarizes the allegations in those counts, both of which the government has agreed to move to dismiss. In the event Paragraph 10 is not removed, Ms. Patterson requests modifying it by adding this language at the end:

> "Ms. Patterson does not admit she engaged in the conduct charged in these counts, both of which the government has agreed to move to dismiss."

*Paragraphs 28, 29, 35, & 36*

Ms. Patterson objects to the inclusion of Paragraph 28, the first sentence of Paragraph 29, and Paragraphs 35 and 36 on the same grounds. These sections relate to the allegations in Counts 14 and 15, which the government has agreed to move to dismiss. They do not address the offense of conviction (conflict of interest), the planning and preparation for that offense, or even the circumstances leading to Ms. Patterson's arrest. Rather, they are offered presumably in support of allegations the government has agreed to move to dismiss and that, if the Court grants that motion, will no longer be part of the case. While a PSR may include relevant conduct, including conduct beyond the facts to which the parties have agreed, these sections of the PSR simply have no relevance to the conflict of interest conduct and are very much in dispute. Because they shed no light on the conflict of interest charge for which Ms. Patterson will be sentenced and are highly prejudicial—particularly if, in the future, they are read by

someone with little familiarity with this case—Ms. Patterson objects to their inclusion in the permanent record that is her presentence report.

## SENTENCING ARGUMENT

Ms. Patterson fully recognizes the gravity of her offense. She is genuinely remorseful and deeply regrets the actions she took.

Ms. Patterson has a long history of helping others. Her desire to do good by others has its roots in her strong faith and her upbringing. Her record of service to others is reflected in the character letters submitted for the Court's consideration. Her record of service to her country speaks for itself.

## SECTION 3553(a) FACTORS

As this Court is aware, sentencing courts must take into account the statutory sentencing factors set forth in 18 U.S.C. § 3553(a) by imposing a sentence sufficient, but not greater than necessary, to comply with the purposes set forth therein, that is,

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

Section 3553(a) directs courts to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory sentencing purposes reflected above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements;

5

(6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

Nature and Circumstances of the Offense and Defendant's History and Characteristics

Taking official action for personal benefit is a serious offense. By doing so, an individual misuses his or her office, potentially to the detriment of the public, and erodes public confidence in an ethical government. Ms. Patterson fully appreciates this.

It is important for the Court to understand how Ms. Patterson, a diligent and devoted public servant, found herself in the situation that now brings her before the Court. She responded to a request for assistance from someone with whom she had developed a working relationship. It was wrong. Because Ms. Patterson had already begun a dialogue with Cobra regarding employment, she should have said no. However, this was not part of a larger scheme to enrich herself at the expense of the public. It was mistake—indeed, a criminal offense—committed by an individual with an otherwise unblemished record and a well-established pattern of service to others.

Ms. Patterson has no criminal history. Apart from the aberrant conduct at issue in this case, she has led a law-abiding life. She has led a productive life. Ms. Patterson put her strong work ethic to use to earn an associate's degree, followed by a bachelor's degree and then a master's degree while simultaneously advancing in her career. There is no doubt that Ms. Patterson will continue to contribute to her family, her community, and her nation. Former professional colleagues provide insight into the manner in which Ms. Patterson approaches her work and treats others as well as the confidence they still have in her.

Former FEMA official Tim Scranton describes her this way:

> Ms. Patterson has a reputation of not only strength to deal with complex and sensitive issues but also one of deep compassion and fairness. I know Jovanda

> spent many days of her off duty personal time meritoriously interacting with the families who suffered death and tragic events from the hurricanes. She purchased flowers and gifts with her personal funds to demonstrate her care for those in time of suffering and pain. She paid for hotel stays for locally hired staff whose homes were uninhabitable. She also purchased goods and supplies in San Juan and drove out to the remote areas and gave it away just to help others in need. All of which she kept private.
>
> * * * *
>
> I have full confidence and trust in Ms. Patterson. She is capable, responsible, compassionate and a true professional with unquestionable integrity.

Ex. 1 (character letters).

Other former professional associates echo those sentiments. MSgt Courtney Newsome served with Ms. Patterson in the Air Force. She credits Ms. Patterson with "showing me the importance of giving back to the community and being a positive ambassador for the Air Force," highlighting instances when Ms. Patterson "spent time at a local orphanage interacting with the kids, teaching English, reading books and playing games" and organized "burger burns to raise money for the Air Force Ball which offset the price for members who were lower ranking." *Id.*

Former VA supervisor Claudia Glasgow characterizes Ms. Patterson as having "possessed an incomparable work ethic and exemplified sheer compassion to [everyone] she came across no matter their stature or title." *Id.* Maurice Moore, who worked with Ms. Patterson at FEMA, says she "is the type of person who has dedicated countless hours of her time helping others" and is "the rock of her family." *Id.*

The letters submitted by family members and other friends speak further to Ms. Patterson's character and accomplishments. A mother's pride is evident in the letter from Elorise Perry Patterson, who talks about Ms. Patterson's military service, her academic accomplishments, her leadership responsibilities at a major federal agency, and her faith. Mrs. Patterson states, "In all my years with Jovanda I have never known her to compromise her integrity for anything." *Id.* Ms. Patterson's aunt, Clara Young, describes the development of

Ms. Patterson's compassion for, and generosity toward, others. During high school, "[i]f there was a classmate, friend or family that didn't have any food or money for lunch although she did not have a lot for herself she would share her lunch. . . ," and up through the present, "[s]he always calls me to make sure that me and my family are doing good and to see if there is anything she could do for us." *Id.* Similarly, a letter from Ms. Patterson's pastor and his wife illustrates the qualities of altruism and compassion. They describe her as "one who treats others as she desires to be treated" with a "willingness to help spiritually, physically or financially." *Id.*

The comments of these individuals speak to the quality of Ms. Patterson's character. They describe an individual who has attempted to lead a good life. They reveal the crime she has committed and for which he stands before the Court in judgment is an aberration that is not reflective of her core values or future potential.

Statutory Purposes of Sentencing

Taking official actions that affect a personal financial interest is a serious offense. A sentence of probation reflects the severity of the crime. For an individual like Ms. Patterson, that is, a first-time offender who recognizes what she did was wrong, who has taken responsibility for her actions, who has otherwise led an honorable life, who has served her country, and who intends to make the most of the rest of her life, a sentence of probation will promote enormous respect for the law and provide just punishment.

Probation will afford adequate deterrence, both general and specific. Such a sentence still leads to all of the collateral consequences that flow from a felony conviction. With regard to specific deterrence, there is no need to protect the public from further crimes committed by Ms. Patterson as the record strongly suggests she will never engage in this type of conduct in the future.

Kinds of Sentences Available

Because 18 U.S.C. § 208 does not includes a statutory minimum, this Court may impose a sentence of probation.

Kinds of Sentences and Sentencing Range Set Forth in the Guidelines

Ms. Patterson's adjusted offense level is 4, which is within Zone A.  Under the sentencing guidelines, the recommended term of imprisonment is zero to six months.  Accordingly, a sentence of probation is within the appropriate guidelines range.

Sentencing Guidelines Policy Statements

The guidelines policy statements refer to the need for just punishment.  The introductory chapter, for example, outlines the basic purposes of criminal punishment that supported the guidelines' creation.  Included among those purposes is just punishment.  USSG, Ch. 1, Part A (Introduction and Authority).  Ms. Patterson respectfully submits that the totality of circumstances in this case, including the isolated nature of the offense, suggest that a sentence of probation would be just punishment.

Avoidance of Unwarranted Sentencing Disparities

Because no co-defendants have been sentenced for, or even charged with, engaging in an official conflict of interest, there is no sentence within the case to serve as a comparison.  However, sentences of probation for this offense, at least under similar circumstances, are not uncommon.

Need to Provide Restitution to Victims of the Offense

Restitution is not at issue in this case so the Court need not consider a sentence that would include an order of restitution.

**CONCLUSION**

Ms. Patterson recognizes she broke the law. She is remorseful and wants to make amends for what she did. She has accepted responsibility for her conduct. Ms. Patterson is an individual of strong character who wants to continue to serve the community in meaningful and positive ways.

For the reasons set forth above and those to be presented at the sentencing hearing, Ms. Patterson respectfully asks the Court to impose a sentence of probation.

Respectfully submitted in San Juan, Puerto Rico on June 11, 2020.

          /s/
Timothy D. Belevetz
Kristina S. Dahmann
Ice Miller LLP
20 F Street, N.W., Suite 850
Washington, DC  20001
Tel: (202) 572-1605
timothy.belevetz@icemiller.com
kristina.dahmann@icemiller.com
Admitted *pro hac vice*

José R. Aguayo Caussade
José R. Aguayo Law Office
569 Tn. Cesar Gonzalez Street
San Juan, PR  00918
Tel:  (787) 765-0814
joseraguayo@gmail.com
USDC-PR Bar No. 123301

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 11th day of June 2020, I caused the foregoing to be filed electronically using the Court's CM/ECF system, which will notify all counsel of record.

                                                     /s/
                                    Timothy D. Belevetz
                                    Ice Miller LLP
                                    20 F Street, N.W., Suite 850
                                    Washington, DC  20001
                                    Tel: (202) 572-1605
                                    timothy.belevetz@icemiller.com